IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LEONARD JONES,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Civil Action No. 1:20-cv-00057-TDS-JEP |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW Defendant BMW of North America, LLC ("BMW"), by and through its undersigned counsel, and hereby submits this memorandum in support of its Motion to Dismiss the First Amended Complaint of Leonard Jones ("Plaintiff"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff fails to state claims upon which relief may be granted.

## INTRODUCTION

This action arises out of Plaintiff's purchase of a used BMW passenger vehicle equipped with BMW's "N63" engine. Plaintiff contends that the N63 engine consumed oil at a higher rate than Plaintiff anticipated and that he has suffered injury in the form of additional oil changes and other repairs to, or replacement of, the engine. Based on these allegations, Plaintiff asserts claims for (1) Breach of warranty pursuant to the Magnuson-Moss Warranty Act (the "MMWA"), 15 U.S.C. § 2301 *et. seq.*; (2) Breach of implied warranty of merchantability pursuant to the MMWA and N.C. Gen. Stat. § 25-2-314; (3)

Breach of express warranty pursuant to N.C. Gen. Stat. § 25-2-313; (4) Violation of the North Carolina Unfair Trade Practices Act ("NCUTPA"), N.C. Gen. Stat. § 75-1.1 *et. seq.*; and (5) Fraudulent concealment. Each claim is procedurally and substantively defective as a matter of law.

As a matter of procedure, Plaintiff's claims are untimely. Plaintiff's stale claims are also substantively defective in that the allegations fail to allege a plausible claim for relief. Plaintiff provides factual support for each claim in the form of information obtained from random internet chat rooms that, even proved reliable, was widely available to Plaintiff prior to the purchase of the vehicle. Plaintiff also relies upon the fact that BMW issued a service information bulletin related to oil consumption in the N63 engine that explains why higher oil consumption in N63 engines is normal. Such paltry allegations do nothing to establish warranty-based claims and fall well short of the particularity necessary to seek redress under the misrepresentation-based claims. As explained in more detail below, Plaintiff's claims should be dismissed as a matter of law.

## STATEMENT OF THE NATURE OF THE MATTER AND OF THE FACTS

On or around March 12, 2012, Plaintiff purchased a 2011 BMW 550i, VIN WBAFR9C59BC270922 (the "Vehicle") for $63,534.00. (Am. Compl. ¶¶ 14-15.) Plaintiff alleges that the Vehicle was accompanied by a New Vehicle Limited Warranty pursuant to which BMW "promised to repair or replace components found to be defective in material or workmanship during the 4-year / 50,000-mile following such Vehicle delivery to consumer" (Am. Compl. ¶ 29), and a Certified Pre-Owned Limited Warranty which

"promised to repair or replace components found to be defective in material or workmanship during the 6-year / 100,000-mile following such original Vehicle delivery to consumer." (Am. Compl. ¶ 30.)

Plaintiff alleges that the Vehicle was equipped with one of BMW's "N63" engines. (Am. Compl. ¶ 41.) Shortly after purchasing the Vehicle, Plaintiff formed the belief that the N63 engine consumed an "excessive" amount of oil. (Am. Compl. ¶ 16.) Plaintiff alleges that it was necessary to add oil to the Vehicle prior to BMW's recommended oil change intervals. (Am. Compl. ¶ 16.) Plaintiff took the Vehicle to an authorized dealer and complained that the Vehicle was consuming oil above and beyond the normal amount. (Am. Compl. ¶ 17.) Much to Plaintiff's chagrin, BMW's authorized dealer explained that the oil consumption was typical and that no repair on the Vehicle was necessary. (Am. Compl. ¶ 18.)

Dissatisfied with receiving confirmation that the Vehicle did not suffer from a defect, Plaintiff turned to internet chat rooms and forums to bolster Plaintiff's theory of a defect. (Am. Compl. ¶¶ 48-50.) Plaintiff alleges to have unearthed several like-minded individuals who shared Plaintiff's belief that the N63 consumed oil at a surprising rate. (*Id.*) Plaintiff also notes that BMW took the common step of issuing several technical service bulletins ("TSB") related to the oil consumption of certain BMW vehicles. (Am. Compl. ¶ 52.) Confusingly, however, the TSB simply confirms that the N63 oil consumption rate is not a defect. (Am. Compl. ¶ 56.) Rather, the TSB explains that higher oil consumption in the N63 engine is normal and provides assistance and direction for the

proper maintenance and care of vehicles equipped with the N63. (*Id.*) Plaintiff further alleges that BMW offered a "N63 Customer Care Package," "N63 Customer Loyalty Offer," and "N63 Customer Appreciation Program," and that such customer service efforts evidence a defect with the N63's oil consumption. (Am. Compl. ¶¶ 61, 64-65.)

Plaintiff initiated this action by filing his original Complaint on January 17, 2020. (Dkt. 1.) BMW moved to dismiss the original Complaint, but that motion was rendered moot upon the filing of Plaintiff's First Amended Complaint on April 21, 2020. (Dkts. 10, 17.) Based on the above-referenced factual allegations set forth in the Amended Complaint, Plaintiff seeks replacement of the nine-year old Vehicle, unspecified money damages, statutory damages, and attorneys' fees. (Am. Compl., *prayer for relief*.)

## STATEMENT OF THE QUESTION PRESENTED

Has Plaintiff failed to state any claim upon which relief may be granted such that the First Amended Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure?

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992), *cert. denied*, *Hunt v. Republican Party*, 510 U.S. 828 (1993).

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 550 U.S. 544, 570 (2007). The Court elaborated in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), finding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and that "only a complaint that states a plausible claim for relief survives a motion to dismiss." The allegations must be more than a "formulaic recitation of the elements" of a claim. *Id.* at 1951.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Id.* at 1949 (internal citations omitted). Thus, dismissal under Rule 12(b)(6) is proper when, from the face of the complaint, it is clear that the plaintiff's claims are not supported by law, that one or more facts necessary to assert a valid claim have not been pled, or that facts exist that necessarily defeat plaintiff's claims. In this case, Plaintiff's claims are not supported by law and should be dismissed.

## LEGAL ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS.

#### A. Plaintiff's warranty-based claims are barred by the statute of limitations.

Plaintiff sets forth a claim for breach of express and implied warranties under North Carolina law (Count II and III) as well as breach of express and implied warranties under

the MMWA (Counts I and II.) Each claim is time barred and should be dismissed as a matter of law.

Plaintiff's federal and state warranty claims are subject to the limitations period set forth in N.C. Gen. Stat. § 25-2-725. *See Fairchild v. Kubota Tractor Corp.*, No. 1:18CV69, 2018 U.S. Dist. LEXIS 143227, at *9 (W.D.N.C. Aug. 23, 2018) (holding that a claim for breach of an express warranty is subject to the limitations period set forth in N.C. Gen. Stat. § 25-2-725); *Ferro v. Volvo Penta of the Ams., LLC*, No. 5:17-CV-194-BO, 2017 U.S. Dist. LEXIS 137721, at *5 (E.D.N.C. Aug. 25, 2017) ("The MMWA does not contain a statute of limitations, but when evaluating timeliness of claims under the MMWA, courts are directed to use the applicable state law.")

Pursuant to N.C. Gen. Stat. § 25-2-725,

> (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.
>
> (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

The applicable statutory language expressly provides that the accrual of a claim occurs at "either (a) tender of delivery, or (b) if the goods were sold with a future performance warranty, the date the defect was or should have been discovered so long as it remains within the life of the express warranty terms." *Fairchild*, 2018 U.S. Dist. LEXIS 143227,

at *11. Importantly, "[a]lthough the discovery rule applies when the goods are sold with a warranty for future performance, it 'does not extend the life of an express warranty beyond its terms.'" *Id.* (quoting *Yancey v. Remington Arms Co., LLC*, N. 1:10-CV-918, 2013 U.S. Dist. LEXIS 140397, 2013 WL 5462205, at *5 (M.D.N.C. Sept. 30, 2013)).

Plaintiff seeks to assert warranty claims based upon BMW's "promise[] to repair or replace components found to be defective in material or workmanship **during the 4-year / 50,000-mile following such Vehicle delivery to consumer**." (Am. Compl. ¶ 29) (emphasis added). Plaintiff further alleges that, under a certified pre-owned warranty, "BMW promised to repair or replace components found to be defective in material or workmanship **during the 6-year / 100,000-mile following such original Vehicle delivery to consumer**." (Am. Compl. ¶ 30) (emphasis added). The plain language of each written warranty clearly establishes that the applicable warranty in this matter was a promise to make repairs for a period—and not a warranty for future performance. In *Fairchild*, the Court examined similar language and concluded that no future performance warranty was created:

> In the instant case, the warranty states that Defendant "promis[es] to repair or replace parts which have a defect in material or workmanship" that "occur . . . within the length of warranty coverage." Reply (# 18) Ex. A at 5. The warranty is a promise to repair for a period. Therefore, this is not a future performance warranty. Consequently, the proper beginning of the accrual of the claim in this case is upon tender of delivery.

*Id.*, at *12. Therefore, under the principles of *Fairchild*, Plaintiff's claim began to accrue at tender of delivery.

Plaintiff alleges that he purchased the Vehicle—a 2011 BMW 550i—on March 12, 2012. (Am. Compl. ¶ 14.) Although Plaintiff fails to allege when the Vehicle was first delivered, Plaintiff does allege that the Vehicle was a certified pre-owned vehicle. (Am. Compl. ¶ 30.) As such, the Vehicle was delivered to a prior owner before March 12, 2012. Applying the four-year warranty from the date of delivery, any claim under the New Vehicle Limited Warranty or the Certified Pre-Owned Limited Warranty[1] accrued before March 12, 2016 (and potentially long before). Plaintiff's Complaint was filed on January 21, 2020, and his Amended Complaint was filed April 21, 2020. Therefore, Plaintiff's state and federal warranty claims are time-barred and should be dismissed.

### B. Plaintiff's misrepresentation-based claims are barred by the statute of limitations.

Plaintiff's Amended Complaint sets forth a claim for violation of N.C. Gen. Stat. § 75-1.1 and a claim for common law fraudulent concealment. Both claims are based on the same alleged misrepresentation by omission related to the N63's oil consumption. (*Compare* Am. Compl. ¶¶ 126-27; Am. Compl. ¶¶ 140-41.)

---

[1] While the Plaintiff alleges the Certified Pre-Owned Limited Warranty ran for six years or 100,000 miles, North Carolina law forbids parties from extending the four-year statute of limitations for contract and warranty claims like those asserted by Plaintiff. *See* N.C. Gen. Stat. § 25-2-725(1); *Petty v. Marvin Lumber & Cedar Co.*, 644 F. App'x 272, 273 (4th Cir. 2016) (express warranty of 10 years did not extend four-year statute of limitations under § 25-2-725(1)). Under § 25-2-725(1), "the original agreement [of] the parties may reduce the period of limitation to not less than one year *but may not extend it*." (emphasis added). As such, the four-year statute of limitations specified in N.C. Gen. Stat. § 25-2-725—and not a six-year period—applies to Plaintiff's claims under the Certified Pre-Owned Limited Warranty.

N.C. Gen. Stat. § 1-52(9) provides that a claim of common law fraud is subject to a three-year statute of limitation. The limitations period begins to run from "the discovery of the fraud or from the time it should have been discovered in the exercise of reasonable diligence." *Mt. Land Props. v. Lovell*, 46 F. Supp.3d 609, 624 (W.D.N.C. 2014).[2] On the other hand, a Chapter 75 claim carries a four-year statute of limitation. *See* N.C. Gen. Stat. § 75-16.2, *Ferro v. Volvo Penta of the Ams., LLC*, 731 F. App'x 208, 211 (4th Cir. 2018), When "a UDTPA claim is based on alleged fraudulent conduct, then the violation occurs — and the limitations clock starts running – 'at the time that the fraud is discovered or should have been discovered with the exercise of reasonable diligence.'" *Dreamstreet Invs., Inc. v. MidCountry Bank*, 842 F.3d 825, 830 (4th Cir. 2016) (quoting *Rothmans Tobacco Co., Ltd. v. Liggett Grp., Inc.*, 770 F.2d 1246, 1249 (4th Cir. 1985)).

Although the issue of reasonable due diligence is generally an issue of fact for the jury, "[f]ailure to exercise due diligence may be determined as a matter of law . . . where it is clear that there was both capacity and opportunity to discovery the mistake." *Mt. Land Props.*, 46 F. Supp.3d at 624.

Here, Plaintiff's misrepresentation-based claims are premised upon the purported failure to disclose the oil consumption of the N63 engine. Plaintiff affirmatively alleges that "[n]ot long after [the] Vehicle purchase, Plaintiff observed that the Vehicle consumed

[2] Plaintiff's claim is styled as "fraudulent concealment." Fraudulent concealment, however, is not an independent claim as it is only a doctrine that may be raised in limited circumstances to determine whether tolling of the applicable statute of limitations is appropriate. *See Hirschler v. GMD Inv. Ltd. P'ship*, No. 91-2087, 1992 U.S. App. LEXIS 18492, at *9 (4th Cir. Aug. 7, 1992). Therefore, Plaintiff's claim is understood to be a claim of common law fraud.

an excessive amount of engine oil." (Am. Compl. ¶ 16.) He also notes that information regarding this "widely known" purported defect was especially prevalent on the internet at, and prior to, the time he purchased the vehicle. (*See* Am. Compl. ¶¶ 42, 47-50.) Based on Plaintiff's allegations, Plaintiff was on notice "not long after" March 12, 2012, the purchase date of the Vehicle. Plaintiff waited until January 17, 2020, to file the instant Complaint and until April 21, 2020 to file the Amended Complaint. To be timely, Plaintiff's fraud claim could not have accrued before January 17, 2017 (almost five years after purchase), and his unfair and deceptive trade practices claim could not have accrued before January 17, 2016 (almost four years after purchase) – hardly what is understood to be "not long after." Accordingly, Plaintiff's claims for common law fraud and for unfair and deceptive trade practices are barred as a matter of law.

**C. Equitable tolling does not save Plaintiff's claims from dismissal.**

Apparently recognizing the stale nature of each claim, Plaintiff contends that one or more tolling doctrines saves the claims from dismissal. As explained below, Plaintiff's contentions are meritless.

*1. Fraudulent Concealment/Equitable Estoppel.*

Plaintiff first seeks to invoke the fraudulent concealment doctrine, which provides that "when the fraud has been concealed or is of such a character as to conceal itself, and the plaintiff is not negligent or guilty of laches, the limitations period does not begin to run until the plaintiff discovers the fraud." *Supermarket of Marlinton v. Meadow Gold Dairies*, 71 F.3d 119, 122 (4th Cir. 1995). The fraudulent concealment doctrine applies only where

"(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id*. Further, in pleading factual support for fraudulent concealment, a party must satisfy the particularity standard of Federal Rule 9(b). *Steele v. Capital One Home Loans, LLC*, No. 3:13-CV-704-RJC-DSC, 2014 U.S. Dist. LEXIS 104142, at *7 (W.D.N.C. July 30, 2014).

Plaintiff has failed to set forth facts sufficient to support any of the elements of fraudulent concealment. First, Plaintiff cannot reasonably claim that BMW concealed information regarding the oil consumption of the N63 engine. To the contrary, Plaintiff alleges that the purported oil consumption defect was widely known years before the purchase of the Vehicle. Plaintiff alleges that BMW customers were discussing the N63's oil consumption in 2011. (Am. Compl. ¶¶ 48-49.) Further, Plaintiff alleges that several service bulletins were issued related to the oil consumption. (Am. Compl. ¶ 52.) For example, Service Bulletin SIB 11-03-13, issued in June 2013, changed the engine oil consumption specifications. (Am. Compl. ¶¶ 56-57.)[3]

More importantly, the plethora of information available to Plaintiff years before the Vehicle was even purchased belies any contention that Plaintiff could not discover the information during the statutory period. A basic internet search would have revealed certain individual opinions on the N63, including opinions on the oil consumption rate for

[3] For the same reasons that fraudulent concealment should not toll the statute of limitations, Plaintiff's claim that BMW should be estopped from relying on a statute of limitations defense based on alleged concealment fails.

which Plaintiff now seeks compensation. (Am. Compl. ¶¶ 48-50, 55.) Plaintiff cannot rely on his failure to seek publicly-available information (or his choice to ignore such information) to support his contention that BMW fraudulently concealed relevant information such that the applicable statute of limitations should be tolled.

*2. Class Action Tolling.*

BMW recognizes that the filing of a class action may toll limitations periods for certain claims of class participants. *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345 (1983). Such tolling, however, only applies to later filed pleadings containing the *same claims*. *Crown*, at 353-54 (emphasis added). Moreover, class action tolling does not extend a statute of limitation indefinitely. Rather, as recognized by North Carolina district courts, the limitations period begins to run again upon the occurrence of certain procedural developments. For example, tolling ceases when a putative class member opts out of the class:

> most of the Circuit Courts of Appeal that have examined the issue have determined that if a class is certified, tolling ceases as to a particular class member when that class member opts out of the action. *See, e.g., Realmonte v. Reeves*, 169 F.3d 1280, 1283-84 (10th Cir. 1999) (holding that statutes of limitation was tolled until class member exercised right to opt out); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985) ("When certification has been granted, the statute begins running anew from the date when the class member exercises the right to opt out . . . ."); *Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d 603, 607-08 (7th Cir. 1980), *cert. denied*, 451 U.S. 976, 68 L. Ed. 2d 357, 101 S. Ct. 2058 (1981) (holding that where a defendant class certified, the statute of limitations remains tolled until a defendant opts out).

*Womack v. UPS*, 311 F. Supp.2d 492, 497 (E.D.N.C. 2004) (holding tolling ceases upon entry of summary judgment).

Here, Plaintiff contends that the class action filed in the United States District Court for the District of New Jersey captioned *Bang v. BMW of North America*, LLC No. 2:15-CV-6945 ("BMW Class Action"), sufficiently tolled the applicable limitations periods so as to bring each of his claims within the applicable periods. The BMW Class Action was filed on September 18, 2015. (Am. Compl. ¶ 93; BMW Class Action D.E # 1.) The BMW Class Action was ultimately resolved by settlement, with the Court entering an Amended Order Granting Preliminary Approval of Class Action Settlement ("Preliminary Approval Order") on June 21, 2018. (BMW Class Action, D.E. # 89.) The Preliminary Approval Order expressly provided the opt-out deadline of August 23, 2018. (BMW Class Action, D.E. # 89, ¶ 9.) The Plaintiff alleges he opted out of the settlement on August 10, 2018. (Am. Compl. ¶ 92.)

Fatal to Plaintiff's tolling argument, however, Plaintiff's claims are not the same claims as those brought in the BMW Class Action. The BMW Class Action contemplated generic claims for breach of express and/or implied warranty, along with multiple state specific consumer protection laws for the following states: California, New York Washington, Kansas, Texas and Connecticut. (BMW Class Action D.E # 32.) Nowhere does the BMW Class Action contemplate warranty claims as interpreted and codified under North Carolina law. The BMW Class Action, despite considering state law consumer protection claims of numerous other states, certainly does not contemplate North Carolina-

specific consumer protection claims. Because Plaintiff's Amended Complaint seeks separate and distinct remedies under North Carolina law, the statutes of limitation were not tolled for those claims. Accordingly, Plaintiff's state-law claims are untimely and should be dismissed.[4]

## II. PLAINTIFF FAILS TO ALLEGE THE CRITICAL ELEMENT OF RELIANCE TO SUPPORT A CLAIM FOR BREACH OF EXPRESS WARRANTY.

To establish a breach of express warranty claim under North Carolina law, a plaintiff must establish the following elements: "(1) an express warranty of fact or a promise as to the product, (2) the plaintiff's reliance on the warranty in choosing to purchase the product, and (3) the defendant's breach of the warranty." *Maxwell v. Remington Arms Co., LLC*, No. 1:10CV918, 2014 U.S. Dist. LEXIS 158153, at *9 (M.D.N.C. Nov. 7, 2014). In *Maxwell*, the court explained the critical role of pleading reliance: "Plaintiff never alleged a specific warranty term that was relied upon nor did he explain how such a term was breached. Instead, Plaintiff only provided the conclusory allegation that the fact of Defendant issuing a recall notice provided sufficient evidence of a breach of the purported

---

[4] Plaintiff's Amended Complaint also references an individual action filed in New Jersey on December 3, 2018, and indicates such court severed Plaintiff's claims and deemed the limitations for "any claim asserted in that case" tolled for 30 days from its order. (Am. Compl. ¶¶ 92, 94-95.) Similar to the claims made in the BMW Class Action, Plaintiff's claims in her Amended Complaint sounding in North Carolina state law are not the "same claims" as those made in the New Jersey action. As such, those claims are not subject to tolling under class action tolling or the order issued by the New Jersey court. Moreover, the New Jersey Court never reached the merits of the Plaintiff's tolling arguments.

express warranty." *Id.*, at *11-13. (dismissing plaintiff's claim for breach of express warranty.)

Here, Plaintiff relies on bare conclusory allegations that fall short under the standards set forth in *Twombly* and *Maxwell*. Plaintiff's Amended Complaint references only the terms of the New Vehicle Limited Warranty in passing, alleging that the warranty covered "materials or workmanship." (Am. Compl. ¶ 32.) Plaintiff does not, however, allege which specific warranty term BMW is alleged to have breached. Further, Plaintiff's claim of reliance is pitted solely in the conclusory statement that "Plaintiff relied upon BMW's representations contained within Defendant's New Vehicle Limited Warranty and Certified Pre-Owned Limited Warranty that accompanied the sale of the Vehicle, including the representation that BMW would repair the Vehicle's engine upon discovery of a defect in material or workmanship; these representations were material to Plaintiff's decisions to purchase the Vehicle." (Am. Compl. ¶ 28.) This statement provides no factual underpinnings to support Plaintiff's contention of reliance. Rather, the statement relies upon the use of legal "trigger words" that are no longer sufficient under the *Twombly* standard. Plaintiff's claim for breach of the New Vehicle Limited Warranty should be dismissed.

## III. PLAINTIFF FAILS TO PLEAD CLAIMS FOR UNFAIR AND DECEPTIVE TRADE PRACTICES AND FRAUD WITH THE REQUISITE PARTICULARITY.

Fraud-based claims must satisfy Rule 9(b)'s heightened pleading standard. *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013). A plaintiff must also plead a Chapter 75 claim with particularity when, as is the case here,

the claim is solely derivative of a claim of fraud. *Topshelf Mgmt. v. Campbell-Ewald Co.*, 117 F. Supp.3d 722, 731 (M.D.N.C. 2015) (holding Rule 9(b) applies to section 75-1.1 claims of false or deceptive representations).

Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This heightened pleading requirement serves to protect defendants' reputations from baseless accusations, eliminate meritless suits brought only to extract a settlement, discourage fishing expeditions, and provide defendants with enough information about a plaintiff's allegations to mount a defense." *Maguire Fin., LP v. PowerSecure Int'l, Inc.*, 876 F.3d 541, 546 (4th Cir. 2017). To satisfy Rule 9(b), a plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1297, at 590 (2d ed. 1990)).

Under North Carolina law, the elements of actual fraud are "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Forbis v. Neal*, 361 N.C. 519,, 526-27, 649 S.E.2d 382, 387 (2007) (internal quotation marks omitted). "Additionally, any reliance on the allegedly false representations must be reasonable." *Id.* North Carolina law recognizes that "'[m]ere generalities and conclusory allegations of fraud will not suffice'" to state a claim. *Lord Indus., Inc. v. Ins.*

*Co. of N. Am.*, No. 97-2174, 1998 U.S. App. LEXIS 15079 at *9 (4th Cir. July 6, 1998) (unpublished) (quoting *Moore v. Wachovia Bank & Trust Co.*, 30 N.C. App. 390, 226 S.E.2d 833, 835 (1976)).

When a fraud claim is based on a party's failure to disclose a material fact, the party accused of fraud must have had a duty to speak or have taken steps to actively conceal facts. *See Setzer v. Old Republic Life Ins. Co.*, 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962). A duty to speak exists (1) in the context of a fiduciary relationship, (2) where "a party has taken affirmative steps to conceal material facts from the other," or (3) "where one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Jacobson v. Walsh*, No. 10–CVS–9619, 2014 NCBC LEXIS 2, at *16–17 (N.C. Super. Ct. Jan. 22, 2014) (quoting *Harton v. Harton*, 81 N.C. App. 295, 297–98, 344 S.E.2d 117, 119 (1986)).

Here, Plaintiff's claim for fraud is premised upon the contention that BMW breached a duty to disclose the oil consumption of the N63 engine. (Am. Compl. ¶¶ 125-26, 139-40.) Plaintiff's claim of fraud initially fails because the Amended Complaint provides no factual underpinnings that could reasonably establish any one of the three grounds set forth in *Setzer*. First, Plaintiff does not allege BMW was somehow a fiduciary. Second, Plaintiff does not allege a single act on the part of BMW that could be construed as an affirmative attempt to conceal the oil consumption of the N63 engine. Rather, Plaintiff relies upon conclusory statements such as Defendant "[i]ntentionally concealed

the foregoing from Plaintiff." (Am. Compl. ¶ 142(b).) Such conclusory statements fall well short of the particularity standard of Rule 9(b). Third, Plaintiff cannot allege that he reasonably relied on BMW's alleged misrepresentations. To the contrary, Plaintiff's own allegations defeat any argument that reliance on alleged misrepresentations would have been reasonable; as alleged by Plaintiff, the oil consumption of the N63 engine was widely disseminated public knowledge for years prior to Plaintiff's purchase of the Vehicle. (*See, e.g.*, Am. Compl. ¶¶ 48, 54.) More specifically, Plaintiff alleges that internet forums were dedicated to discussing the N63 engine's oil consumption, and that an "Internet search of 'N63 AND Burning Oil' reveals thousands of similar complaints." (Am. Compl. ¶¶ 48-50.) Plaintiff goes so far as to allege that the N63 engine's oil consumption was "notorious." (Am. Compl. ¶ 43.) The oil consumption issue cannot be both "notorious" and, at the same time, so well concealed that Plaintiff can claim ignorance and an inability to discover the N63 engine's oil consumption through reasonable diligence. Because the Amended Complaint fails to set forth a cognizable legal ground for concealment, Plaintiff's fraud-based claims should be dismissed.

Plaintiff also fails to plead fraud with any particularity, let alone the heightened standard required by Rule 9(b). Plaintiff's cursory allegations fail to specifically identify the alleged misrepresentations, the time or place of the alleged misrepresentations, the specific contents of the misrepresentations, the name of the person who allegedly made the misrepresentations, or the fruit allegedly obtained by the purported maker of the misrepresentations. As Plaintiff's allegations of fraud are not pled with the specificity

required by Rule 9, Plaintiff's fraud-based claims should be dismissed with prejudice under Rule 12(b)(6).

## IV. PLAINTIFF'S CLAIMS FOR UNFAIR AND DECEPTIVE TRADE PRACTICES AND FRAUDULENT CONCEALMENT ARE BARRED BY THE ECONOMIC LOSS DOCTRINE.

Plaintiff's tort claims for fraudulent concealment and unfair or deceptive trade practices should be also dismissed under the economic loss rule.

"It is well settled in North Carolina that the economic loss rule prohibits recovery for purely economic loss in tort when a contract, an express warranty, or the Uniform Commercial Code operates to allocate risk." *Malone v. Tamko Roofing Prod. Inc.*, No. 3:13-CV-00089-MOC-DCK, 2013 WL 5561628, at *3 (W.D.N.C. Oct. 8, 2013). The term "economic loss" has been construed to include damages to the product (i.e., the subject of the contract) itself. *Moore v. Coachmen Indus., Inc.*, 129 N.C. App. 389, 401–02, 499 S.E.2d 772, 780 (1998).

> The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective. To give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract.

*Id.*

In cases (like this one) involving allegations of a defective product where the only damage alleged is damage to the product itself and the tort allegations are intertwined with

the breach of contract or warranty claims,[5] claims for fraudulent concealment or unfair and deceptive trade practices should be dismissed pursuant to the economic loss rule. *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006) (finding that the economic loss rule barred a claim for unfair and deceptive trade practices where plaintiff alleged that the defendants had superior knowledge of defect, failed to warn consumers, and continued to promote the product); *Ferro v. Vol Vo Penta of the Americas, LLC*, No. 5:17-CV-194-BO, 2017 WL 3710071, at *5 (E.D.N.C. Aug. 28, 2017), *aff'd sub nom. Ferro v. Volvo Penta of the Americas, LLC*, 731 F. App'x 208 (4th Cir. 2018) ("Plaintiff has claimed purely economic loss and such loss in not recoverable under tort law in a products liability action in North Carolina.")

For example, in *Wireless Commc'ns, Inc. v. Epicor Software Corp.*, No. 3:10CV556-DSC, 2011 WL 90238, at *5 (W.D.N.C. Jan. 11, 2011), the Court found that, like Plaintiff herein, the plaintiff "failed to allege distinct and identifiable facts outside the realm of contract performance."

> Wireless' fraud, negligent misrepresentation, and unfair and deceptive trade practices claims allege economic losses resulting from Epicor's purported misrepresentations about the Software, which Wireless purchased under a written contract and which failed to perform as Wireless expected. Wireless has not alleged any personal injury or harm to property other than the allegedly defective Software. Although at first glance Wireless makes a compelling argument that Epicor tortiously made representations to induce it to enter into the Agreement, make payments, and continue to buy additional software, these arguments fail because at the heart of Wireless' claim is the performance of the contract.

[5] For example, in support of both his unfair and deceptive trade practices claim and his fraudulent concealment claim, Plaintiff alleges that Defendant "concealed and failed to disclose the defective nature of the Vehicle and its engine." Am. Compl. at ¶¶ 126, 141.

*Id.*

Given that plaintiff has alleged only damage to the Vehicle itself, he is limited to a claim sounding in warranty, and the Court should dismiss the claims for fraudulent concealment and unfair and deceptive trade practices under Rule 12(b)(6) as barred by the economic loss rule.

## CONCLUSION

As set forth above, Plaintiff's claims are barred by the applicable statutes of limitation, and Plaintiff has failed to plead the required elements or to plead with the required particularity. As such, the First Amended Complaint should be dismissed pursuant to Rule 12(b)(6). Therefore, BMW respectfully requests that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

This the 5th day of May, 2020.

NELSON MULLINS RILEY & SCARBOROUGH LLP

/s/ *Leslie Lane Mize*
Leslie Lane Mize
N.C. State Bar No. 32790
leslie.mize@nelsonmullins.com
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 329-3800
Fax: (919) 329-3799

*Counsel for BMW of North America, LLC*

## CERTIFICATE OF WORD COUNT

I certify that the foregoing contains fewer than 6,250 words, which complies with the word limitations of Local Civil Rule 7.3(d) (M.D.N.C.).

Respectfully submitted this the 5th day of May, 2020.

NELSON MULLINS RILEY & SCARBOROUGH LLP

/s/ *Leslie Lane Mize*
Leslie Lane Mize
N.C. State Bar No. 32790
leslie.mize@nelsonmullins.com
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 329-3800
Fax: (919) 329-3799

*Counsel for BMW of North America, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lawrence B. Serbin
The Law Offices of Jason E. Taylor, P.C.
P. O. Box 2688
Hickory, NC 28603

Vlad Hirnyk
Lemberg Law LLC
43 Danbury Road
Wilton, CT 06897
vhirnyk@lemberglaw.com
*Counsel for Plaintiff*

*Counsel for Plaintiff*

NELSON MULLINS RILEY & SCARBOROUGH LLP

/s/ *Leslie Lane Mize*
Leslie Lane Mize
N.C. State Bar No. 32790
leslie.mize@nelsonmullins.com
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 329-3800
Fax: (919) 329-3799

*Counsel for BMW of North America, LLC*