IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LEONARD JONES,<br><br>Plaintiff,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Civil Action No. 1:20-cv-00057-TDS-JEP |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Defendant BMW of North America, LLC ("BMW"), by and through its undersigned counsel, and hereby submits this Reply in response to Plaintiff's Memorandum of Law in Opposition to a Motion to Dismiss [Dkt. 20] ("Memo in Opposition") and in further support of its Motion to Dismiss the Amended Complaint of Leonard Jones (the "Motion"). As set forth in the Motion, in more detail below, and in BMW's Memorandum in Support of Motion to Dismiss [Dkt. 19] ("Memo in Support"), Plaintiff's Amended Complaint fails to state claims upon which relief may be granted and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As an initial matter, BMW notes that, in his Memo in Opposition, Plaintiff at least twice references a list of cases in which the presiding courts have purportedly refused to dismiss cases against BMW relating to alleged defects to BMW's "N63" engine. However, each of the cases cited no doubt differs factually and substantively from the case before this Court and, therefore, provides no relevant support for Plaintiff's argument that his claims should not be dismissed. Further, should the Court choose to consider such tangential cases, Plaintiff conspicuously omits

cases where claims related to the N63 have been dismissed on similar grounds to those asserted by BMW in its Motion and those cases should also been considered.[1]

## I. <u>PLAINTIFF'S CLAIMS ARE NOT TIMELY.</u>

As outlined in more detail in the Memo in Support and as made clear on the face of the Amended Complaint, Plaintiff's claims are untimely.

Plaintiff argues in his Memo in Opposition that neither the date he purchased his car, the date he first observed that his car consumed an excessive amount of oil, nor the date he should have learned of the excessive oil consumption complaints that were widely available on the internet are dates on which his claims accrued. (Memo in Opposition at 6-7.) Plaintiff claims he "did not and *could not have* known his car's consumption of oil was due to a defect on those dates" and that the oil consumption is merely a "symptom" of the defect. (*Id.* at 6 (emphasis added).) These assertions entirely ignore the discovery rule, which defines when Plaintiff's claims accrued under North Carolina law.

The discovery rule for both common law fraud claims and UDTPA claims based on fraudulent conduct dictate that the statute begins to run when the claims and/or the fraud should have been discovered upon the exercise of reasonable diligence.[2]

---

[1] *See e.g. Hurley v. BMW of North America, LLC*, No. 18-5320, 2020 WL 1624861 (E.D. Penn. Apr. 2, 2020) (dismissing unfair trade practices act claims as barred by the economic loss doctrine and implied warranty claims brought under state law and MMWA as untimely); *Mize v. BMW of North America, LLC*, No. 2:19-CV-007-Z-BR, 2020 WL 1526909 (N.D. Tx. Mar. 31, 2020) (misrepresentation claims dismissed for lack of specificity in pleading.

[2] *See* Memo in Support at 7. Although the issue of reasonable due diligence is generally an issue of fact for the jury, "[f]ailure to exercise due diligence may be determined as a matter of law . . . where it is clear that there was both capacity and opportunity to discovery [sic] the mistake." *Mt. Land Props*, 46 F.Supp.3d at 624.

Here, Plaintiff affirmatively alleges that he observed the Vehicle consuming an excessive amount of engine oil "[n]ot long after [the] Vehicle purchase" (Am. Compl. ¶ 16), that the purported oil consumption defect was "widely known" and "notorious for consuming excessive amounts of engine oil" years before he purchased the Vehicle (Am. Compl. ¶¶ 42, 43), that BMW customers were discussing the N63's oil consumption issue in 2011 (Am. Compl. ¶¶ 48-49), that several technical service bulletins were issued related to the oil consumption (Am. Compl. ¶ 52), and that a basic internet search would have revealed a plethora of information and opinions on the N63 (Am. Compl. ¶¶ 44-50). These affirmative allegations regarding the wide array of information available to Plaintiff years before he even purchased the Vehicle and certainly after he noticed the Vehicle consuming "excessive" oil plainly acknowledge that the Plaintiff should have been on notice of his claims had he exercised reasonable diligence, either before purchasing the Vehicle or after noticing the Vehicle consuming "excessive" oil. Thus, it is clear from the Plaintiff's Amended Complaint that his non-warranty-based claims accrued "not long after" he purchased the Vehicle on March 12, 2012. "Not long after" cannot be understood to mean three to four years after purchase, however, and, therefore, as set forth in the Memo in Support, Plaintiff's claims are barred.[3]

[3] As set forth more fully in the Memo in Support, (*see* Memo in Support at 10), based on the filing of the Complaint on January 17, 2020, to have been filed within the applicable statutes of limitations, Plaintiff's fraud and UDTPA claims must have accrued on or after January 17, 2016 (UDTPA—four years before the filing date), and January 17, 2017 (fraud—three years before the filing date). However, according to Plaintiff's allegations, his fraud and UDTPA claims accrued "not long after" purchase in March 2012. January 2016 and January 2017 were well past "not long after") Plaintiff's purchase of the Vehicle.

**A. The Fraudulent Concealment Doctrine Does Not Toll the Statute of Limitations.**

Plaintiff properly cites the elements necessary to allow tolling of the statutes of limitations for fraudulent concealment but fails to plead these elements distinctly.

Plaintiff acknowledges he quickly discovered the "symptoms" of the alleged defect when he noticed the excessive oil consumption shortly after purchasing the Vehicle. However, he references statements made by a BMW dealer that the oil consumption was "normal" as evidence of fraudulent concealment that should toll the statutes of limitations.[4] Plaintiff's reliance on statements from a dealer that oil consumption was normal is insufficient to toll the statute of limitations on claims against BMW. Notably, despite Plaintiff's conclusory allegation in the Amended Complaint[5] that BMW's "network of independently owned dealerships across the United States . . . are agents of BMW," *see* Amended Complaint at ¶ 13, Plaintiff does not specifically allege that Leith BMW, Valley Auto World, or Barron BMW are agents of BMW.

---

[4] Indeed, "denial of wrongdoing amounts to little; wrongdoing is not a straightforward matter of fact, and it is not fraud to deny it." *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007) (citing *Pocahontas Supreme Coal Co., Inc. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir. 1987) ("To permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively nullify the statute of limitations in these cases."); *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (holding that to prevail on an argument that fraudulent concealment tolls the statute of limitations, "the plaintiff must demonstrate [, among other things, that he] failed to discover those facts within the statutory period."); *Earthworks Grp., Inc. v. A&K Props. of S.C., Inc.*, No. 4:17-CV-01486-SAL, 2020 WL 1703897, at *9 (D.S.C. Apr. 8, 2020) ("A defendant's denial of wrongdoing does not rise to the level of fraudulent concealment required to toll the statute."); *Mullinax v. Radian Guar., Inc.*, 311 F. Supp. 2d 474, 491 (M.D.N.C. 2004) (granting a motion to dismiss, in part because "denials of wrongdoing by Defendants ... fail to show that Defendants fraudulently concealed their alleged misconduct").

[5] The Court does not have to accept the legal conclusion for purposes of the Motion to Dismiss. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

Furthermore, while Plaintiff cites no authority for the proposition that independently owned dealerships are agents of BMW, courts have held to the contrary. *See, e.g., Connor v. Ford Motor Co.*, No. 96 C 8343, 1997 WL 724528,*2 (N.D. Ill. Nov.12, 1997) ("The relationship between automobile manufacturers and their dealers has been examined by a host of courts throughout the country, all of which have agreed that dealers are not 'agents' of manufacturers"); *Ago v. Begg, Inc.*, 705 F. Supp. 613, 619 (D.D.C.1988) ("When an automobile manufacturer or an oil company licenses its tradename, it represents to the public only that the dealer is authorized to sell the products manufactured or approved by the licensor.... The manufacturer does not, however, represent anything other than that the dealer sells its products; it does not represent that the dealer is its agent for matters other than the selling of goods ..."); *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *7 (C.D. Cal. Oct. 3, 2014) ("Herremans' complaint contains no allegations that, if proved, would show that the authorized dealer that presumably repaired her vehicle was BMW's agent."). Therefore, Plaintiff has failed to allege an affirmative deceptive act by BMW sufficient to support a finding of fraudulent concealment. *See Friedman v. Mercedes Benz USA LLC*, No. CV 12–7204 GAF (CWx), 2013 WL 8336127, *6 (C.D. Cal. June 12, 2013).

Moreover, for the purposes of his fraudulent concealment argument, Plaintiff entirely ignores the public information he himself alleges was readily available to him, which he either failed to diligently pursue or simply chose to ignore. *See, e.g.*, Amended Complaint at ¶¶ 50, 60. Plaintiff was hardly "unable to uncover necessary facts supporting his claim" as he asserts in his Memo in Opposition. Because Plaintiff did not exercise due diligence and was negligent and/or guilty of laches, he cannot rely on the fraudulent concealment tolling doctrine to toll the statutes of limitations and extend his stale claims.

Plaintiff also fails to satisfy the requirements of Rule 9(b); there are insufficient allegations regarding the identity of anyone at the dealership making what Plaintiff alleges were the misrepresentations and what that person would have gained from the misrepresentation. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Finally, Plaintiff acknowledges that whether the oil consumption at issue is normal or abnormal amounts to a matter of opinion. (Amended Complaint at ¶ 59 ("Many N63 purchasers and automobile consumer advocates disagree that this level of engine oil consumption is normal . . . ."); ¶ 60 ("Consumer Reports offered its opinion . . . .")) Simply because Plaintiff disagrees with BMW's opinion that the engine oil consumption is normal does not render the expression of that opinion by BMW or a dealer fraudulent.[6] As such, Plaintiff has not pled that the dealer's representation that the oil consumption is normal was intentionally fraudulent; he merely alleges that on several occasions when he took the Vehicle to the dealer, the dealer added oil and told him that such engine oil consumption is normal.

**B. Class Action Tolling Does Not Apply to Plaintiff's Claims.**

As outlined in BMW's Memo in Support, the claims Plaintiff brings in this action are different than those brought in the *Bang* class action and, therefore, were not subject to tolling as a result of *Bang*. BMW is not taking the position that the Bang class settlement agreement precludes individuals who opt out from pursuing their own claims against BMW so long as those

---

[6] Such a difference in opinion "cannot sustain the indispensable element of intentional deceit to a claim of relief sounding in fraud." *Watts v. Cumberland Cty. Hosp. Sys., Inc.*, 317 N.C. 110, 118, 343 S.E.2d 879, 885 (1986); *see also Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co.*, 258 N.C. 49, 52, 127 S.E.2d 759, 761 (1962) (A "mere expression of an opinion or belief, or more precisely, a representation which is nothing more than the statement of an opinion, cannot constitute fraud"); *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007) ("denial of wrongdoing amounts to little; wrongdoing is not a straightforward matter of fact, and it is not fraud to deny it.").

claims were the same made in the *Bang* class action. Here, however, they are not the same, and, as such, are not subject to class action tolling.

## II. PLAINTIFF DOES NOT SUFFICIENTLY PLEAD RELIANCE IN SUPPORT OF HIS EXPRESS WARRANTY CLAIM.

Paragraphs 28, 29, and 30 of the Plaintiff's Amended Complaint, which address the New Vehicle Limited Warranty and the Certified Pre-Owned Limited Warranty, amount to nothing more than a mere formulaic recitation of the element of reliance. Further, Plaintiff failed to plead the specific term(s) of such warranty that were allegedly breached and/or relied upon as required, *See Maxwell v. Remington Arms Co., LLC*, No. 1:10CV918, 2014 U.S. Dist. LEXIS 158153, at *9 (M.D.N.C. Nov. 7, 2014) and fails to plead any specific term of the Certified Pre-Owned Limited Warranty, much less the term that was breached. As such, these claims are not pled with the requisite particularity and should be dismissed.

## III. PLAINTIFF DOES NOT STATE A CLAIM FOR FRAUD OR BREACH OF THE UDTPA WITH THE REQUISITE PARTICULARITY.

Plaintiff's Memo in Opposition seems to ignore Plaintiff's failure to plead that BMW had *a duty* to speak (or one of two other duties) necessary to sustain a claim for fraud based on a failure to disclose a material fact. Instead, in an attempt to establish such a duty, Plaintiff points to conclusory allegations that BMW (through its authorized dealer[7]) actively concealed the defect from Plaintiff. BMW maintains that the excessive oil consumption is not a defect. More importantly, allegations pleading that BMW made statements that the oil consumption was normal and issued technical service bulletins and a "Customer Care Package" related to the oil

[7] For the reasons stated above, BMW disputes that the authorized dealer constitutes an agent of BMW and therefore disputes that statements made by the dealer can amount to fraud attributed to BMW.

consumption can hardly be considered active concealment of such issue sufficient to establish a duty to speak. As alleged in the Amended Complaint, statements made by the BMW dealer and the referenced service bulletins represent that additional engine oil consumption is normal. (*See, e.g.*, Amended Complaint at ¶¶ 18, 57.) While Plaintiff may disagree with BMW's opinion regarding the oil consumption, the expression of that opinion does not equate to fraud. *Myrtle Apartments, Inc.*, 258 N.C. at 52, 127 S.E.2d at 761; *GO Computer, Inc. v. Microsoft Corp.*, 508 F.3d 170, 179 (4th Cir. 2007) (noting that it is not fraud to deny wrongdoing).

Furthermore, Plaintiff fails to acknowledge that he must not only establish reliance, which he failed to plead with sufficient particularity, but also that any reliance he alleges must have been reasonable. Because information regarding the oil consumption issue was abundantly available to Plaintiff before he purchased the Vehicle, when he had the Vehicle serviced for such issue, and when the technical service bulletins and "Customer Care Package" were issued, it was hardly reasonable for Plaintiff to rely on allegedly false statements, and Plaintiff has not pled with the requisite particularity that he did so rely.

Finally, while Plaintiff claims he pled fraud with sufficient particularity, he failed to plead many of the necessary elements of fraud based on the heightened standard required by Rule 9(b). Plaintiff's allegations that an unidentified BMW dealer representative told him the excessive oil consumption was normal and his allegations regarding the statements made in the technical service bulletins and "Customer Care Package" are not sufficient to meet this standard. They fail to identify any specific contents of the misrepresentations that were false, the name of the person who allegedly made the misrepresentations, or the fruit allegedly obtained by the purported maker of the misrepresentations. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

## IV. THE ECONOMIC LOSS DOCTRINE PRECLUDES PLAINTIFF'S UDTPA AND FRAUD CLAIMS.

While certain courts may have declined to extend the economic loss doctrine to UDTPA and fraud claims under certain factual scenarios, the economic loss doctrine has been extended in circumstances "when a contract, an express warranty, or the Uniform Commercial Code operates to allocate risk." *Malone v. Tamko Roofing Prod. Inc.*, No. 3:13-CV-00089-MOC-DCK, 2013 WL 5561628, at *3 (W.D.N.C. Oct. 8, 2013). North Carolina courts and the Fourth Circuit have also noted that "attempt[s] by the Plaintiff to manufacture a tort dispute out of what is, at bottom a simple breach of contract claim" are inconsistent with North Carolina law regarding the economic loss doctrine. *See Central Nat'l Gottesman Inc. v. Nakos Paper Products,* No. 3:18-cv-640-RJC-DSC, 2019 WL 7670103, at *5 (W.D.N.C. Aug. 28, 2019) (citing *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164-65 (4th Cir. 2018). That is clearly the attempt by Plaintiff here.

Further, Plaintiff cites *City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, No. 1:19CV540, 2020 WL 1307017 (M.D.N.C. Mar. 2020) as a case in which the court declined to apply the economic loss rule to a UDTPA claim. However, Plaintiff failed to note that the *Suez* court found that a plaintiff "must plead that [the Defendant] had an independent legal duty, which is identifiable and distinct from those set out in contract" for the economic loss rule to be inapplicable to fraud-based claims. *Id.* at *9 (internal quotations omitted). As discussed above, the Plaintiff has failed to plead any such independent legal duty which is "identifiable and distinct" from those set out in the contract of sale and warranties.

While Plaintiff attempts to differentiate statements made by BMW prior to the Plaintiff purchasing the Vehicle from post-purchase statements, Plaintiff's claims all boil down to what he

alleges are failings under the warranties related to the sale of the Vehicle. Such claims are, therefore, intertwined with the breach of contract or warranty claims and fail to establish any independent legal duty from those set out in the warranties. Thus, barring the fraud and UDTPA claims under the economic loss doctrine is appropriate and fulfills the purpose of the doctrine. *See Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006); *Ferro v. Vol Vo Penta of the Americas, LLC*, No. 5:17-CV-194-BO, 2017 WL 3710071 (E.D.N.C. Aug. 28, 2017), *aff'd sub nom. Ferro v. Volvo Penta of the Americas, LLC*, 731 F. App'x 208 (4th Cir. 2018); *Wireless Commc'ns, Inc. v. Epicor Software Corp.*, No. 3:10CV556-DSC, 2011 WL 90238 (W.D.N.C. Jan. 11, 2011).

## V. CONCLUSION

As set forth above and in BMW's Motion and Memo in Support Plaintiff's claims are barred by the applicable statutes of limitation, Plaintiff has failed to plead the required elements or to plead with the required particularity, and BMW therefore respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice.

This the 9th day of June, 2020.

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ *Leslie Lane Mize*
Leslie Lane Mize
N.C. State Bar No. 32790
leslie.mize@nelsonmullins.com
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 329-3800
Fax: (919) 329-3799

*Counsel for BMW of North America, LLC*

## **CERTIFICATE OF WORD COUNT**

Counsel certifies that pursuant to LR 7.3(d) of the Local Civil Rules, the foregoing Memorandum is fewer than 3,125 words (including the body of the brief, headings, and footnotes, but excluding the caption, signature blocks, certificate of service, this certificate of compliance, and exhibits) as reported by the word-processing software.

By: /s/ *Leslie Lane Mize*
Leslie Lane Mize

## CERTIFICATE OF SERVICE

I hereby certify that on June 9th, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lawrence B. Serbin
The Law Offices of Jason E. Taylor, P.C.
P. O. Box 2688
Hickory, NC 28603
LSerbin@jasonetaylor.com

Vlad Hirnyk
Lemberg Law LLC
43 Danbury Road
Wilton, CT 06897
vhirnyk@lemberglaw.com
*Counsel for Plaintiff*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**

/s/ *Leslie Lane Mize*
Leslie Lane Mize
N.C. State Bar No. 32790
leslie.mize@nelsonmullins.com
4140 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
Phone: (919) 329-3800
Fax: (919) 329-3799

*Counsel for BMW of North America, LLC*