IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LEONARD JONES,                    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )        1:20-cv-00057
                                  )
BMW OF NORTH AMERICA, LLC,        )
                                  )
                Defendant.        )

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

Before the court is the motion of Defendant BMW of North America, LCC ("BMW") to dismiss Plaintiff Leonard Jones's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 18.)  Jones brings fraud and warranty-based claims against BMW arising from allegedly defective N63 engines.  For the reasons set forth below, BMW's motion to dismiss will be denied.

## I.   BACKGROUND

The amended complaint alleges the following facts, which the court accepts as true and construes in the light more favorable to Jones for purposes of the present motion:

On March 12, 2012, Jones purchased a certified pre-owned 2011 BMW 550i from BMW's authorized dealer in Raleigh, NC.  (Doc. 17 ¶ 14.)  Prior to purchase, Jones reviewed BMW's New Vehicle Limited Warranty and Certified Pre-Owned Limited Warranty.  (Id. ¶ 28.)  Under both warranties, BMW promised to repair or replace components

found to be defective in material or workmanship during the term of the warranty. (Id. ¶¶ 29, 30.)

Shortly after purchase, Jones discovered the vehicle consumed an excessive amount of engine oil which required him to add oil several times between BMW's recommended oil change intervals. (Id. ¶ 16.) In 2012, Jones complained about the excessive oil consumption to two separate BMW authorized dealers. (Id. ¶ 17.) In response, dealership employees told Jones that the oil consumption was normal and did not offer any repairs to resolve the problem.[1] (Id. ¶ 18.) On or around December 23, 2014, Jones brought his vehicle to a third BMW authorized dealer who performed a "Customer Care Package" on the vehicle. (Id. ¶ 21.) During that visit, the authorized dealer reprogrammed the vehicle's oil

---

[1] In its reply brief, BMW argues for the first time that fraudulent concealment tolling based on the BMW dealerships' employees' statements would be inappropriate because Jones has not sufficiently alleged that the BMW dealerships at issue were BMW's agents. (Doc. 21 at 4–5, 7 n.7.) This argument fails. "Under North Carolina law, the existence of an actual agency relationship depends on the degree of control retained by the principal over the details of the work as it is being performed." Thomas v. Freeway Foods, Inc., 406 F. Supp. 2d 610, 617 (M.D.N.C. 2005) (internal quotation marks omitted). Jones's amended complaint includes sufficient factual allegations to suggest BMW retained control over the BMW dealerships in relation to the execution of warranty repairs. Specifically, Jones alleges that BMW "provides training, materials, special tools, diagnostic software, and replacement parts to its dealers, and demands that the warranty repairs be performed in strict accordance with its repair guidelines, Technical Service Bulletins, and other instructions. . . . In return, BMW pays its authorized dealerships monetary compensation for such warranty repairs." (Doc. 17 ¶¶ 33–35.) Thus, on the face of the complaint, Jones has plausibly alleged an agency relationship. See also Nyarko v. BMW of N. Am., LLC, No. CV RDB-18-3618, 2020 WL 1491361, at *7–8 (D. Md. Mar. 27, 2020).

service interval by reducing it from the earlier of either 15,000 miles or two years to the earlier of either 10,000 miles or one year. (Id. ¶ 22.)

Jones contends that the excessive oil consumption is the result of a manufacturing defect afflicting BMW's N63 engines. (Id. ¶¶ 37, 38.) The N63 engine is a V8, twin-turbocharged engine placed in certain BMW 5 Series, 6 Series, 7 Series, X5, and X6 vehicles from the 2009 through 2014 model years. (Id. ¶¶ 39, 40.) The engine's excessive consumption of engine oil is well known among car enthusiasts and BMW owners. (Id. ¶ 42.)

Jones alleges that BMW tried to conceal the problem by issuing a series of technical service bulletins ("TSBs") discussing the engine oil consumption of N63 engines but failing to acknowledge that the engine was defective. (Id. ¶¶ 52–59.) In a TSB issued in June 2013, BMW increased the engine oil consumption specifications for N63 engines and directed service technicians to double the amount of engine oil added during oil changes. (Id. ¶¶ 54, 55.) Another TSB indicated that "[t]he additional engine oil consumption of a turbocharged engine, as compared to a normally aspirated engine, is normal and not a defect." (Id. ¶ 56.) On December 29, 2014, BMW launched an "N63 Customer Care Package" which, among other things, instructed BMW technicians to offer free replacements of various components within the N63 engine and adjusted the recommended intervals between oil changes. (Id.

3

¶¶ 61, 62.)

On September 18, 2015, a class action lawsuit was filed in the United States District Court for the District of New Jersey which made allegations similar to those presented in this case. See Bang v. BMW of N. Am., LLC, No. CV 15-6945, 2016 WL 7042071 (D.N.J. Dec. 1, 2016). This class action resulted in a settlement. (Doc. 17 ¶ 92.) Jones opted out of the settlement and filed an individual action in New Jersey District Court on December 3, 2018. (Id.) On November 27, 2019, the New Jersey District Court severed and dismissed without prejudice Jones's claims with leave to re-file as a separate action. (Id. ¶ 94); Sarwar v. BMW of N. Am., LLC, No. CV 18-16750, 2019 WL 7499157, at *3 (D.N.J. Nov. 27, 2019). That court further ordered that the statute of limitations for any claims asserted in that case was deemed tolled during the pendency of that action and for a period of thirty days from the date of that order, ultimately extended to January 27, 2020. (Doc. 17 ¶ 95); Sarwar, 2019 WL 7499157, at *3.

Jones filed the present action on January 17, 2020 (Doc. 1) and an amended complaint on April 21, 2020 (Doc. 17). In his amended complaint, he brings five causes of action: breach of warranty pursuant to the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.; breach of an implied warranty of merchantability pursuant to the MMWA and N.C. Gen. Stat. § 25-2-314; breach of express warranties pursuant to N.C. Gen. Stat. § 25-

4

2-313; violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 et seq.; and fraudulent concealment.  (Doc. 17 ¶¶ 96–151.)

BMW now moves to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 18.)  Jones responded in opposition (Doc. 20), and BMW replied (Doc. 21).  The dismissal motion is now fully briefed and ready for resolution.

## II.  ANALYSIS

BMW argues dismissal is appropriate on multiple grounds. First, BMW alleges that all of Jones' claims are barred by the applicable statute of limitations and equitable tolling does not apply.  (Doc. 19 at 5–14.)  Second, in relation to Jones's express warranty claim, BMW contends that Jones has not sufficiently pleaded reliance.  (Id. at 14, 15.)  Lastly, in relation to Jones's UDTPA and fraudulent concealment claims, BMW argues that Jones has not pleaded them with the requisite particularity and that those claims are barred by the economic loss rule.  (Id. at 15–21.)  Each of these arguments will be addressed in turn.

### A.  Statute of Limitations

BMW first seeks dismissal of Jones's claims based on an affirmative defense: the applicable statute of limitations.  A court may resolve a statute of limitations defense at the motion to dismiss stage only if "all facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" Goodman

5

v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (quoting Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993)). The burden of establishing the affirmative defense rests with the defendant. Id. Further, a plaintiff is not required to allege sufficient facts to defeat a statute of limitations defense in his complaint. See id.

A three-year limitations period applies to Jones's claim for common law fraudulent concealment, N.C. Gen. Stat. § 1-52(9) (2020), and a four-year limitations period applies to his claim under the UDTPA, N.C. Gen. Stat. § 75-16.2 (2020). For both of these claims, the limitations period begins to run from the time the fraud was or should have been discovered by the plaintiff with the exercise of reasonable diligence. See Mt. Land Props. v. Lovell, 46 F. Supp. 3d 609, 624 (W.D.N.C. 2014) (common law fraud); Dreamstreet Invs. Inc. v. MidCountry Bank, 842 F.3d 825, 830 (4th Cir. 2016) (UDTPA). Jones's North Carolina warranty-based claims are subject to a limitations period of four years after a cause accrues. N.C. Gen. Stat. § 25-2-725 (2020). Under North Carolina law, a cause for breach of warranty accrues at tender of delivery.[2]

---

[2] Alternatively, as BMW points out, where goods are sold with a future performance warranty, a cause will accrue on the date when the defect should have been discovered. N.C. Gen. Stat. § 25-2-725(2). Neither party argues that BMW's warranties were future performance warranties. (See Doc. 17; Doc. 19 at 7; Doc. 20.) See also Fairchild v. Kubota Tractor Corp., No. 1:18CV69, 2018 WL 4038126, at *5 (W.D.N.C. Aug. 23, 2018) (analyzing similar language and concluding no future performance warranty was created). As such, the accrual of future performance warranties will not be addressed here.

6

Id.  The MMWA does not contain a statute of limitations.  When faced with a federal statute without a specified limitations period, federal courts apply the limitations period of an analogous state law.  N. Star Steel Co. v. Thomas, 515 U.S. 29, 33-34 (1995).  The MMWA supplements state law by supplying a federal cause of action for warranty violations.  Wolf v. Ford Motor Co., 829 F.2d 1277, 1278 (4th Cir. 1987).  Accordingly, courts adjudicating MMWA claims apply the limitations period applicable to state law breach of warranty claims.  See, e.g., Ferro v. Volvo Penta of the Ams., LLC, 731 F. App'x 208, 210 (4th Cir. 2018) (applying four-year statute of limitations applicable under North Carolina law claims for breach of warranty to MMWA claims).  Therefore, the four-year statute of limitations applicable to North Carolina breach of warranty claims governs.  Id.; N.C. Gen. Stat. § 25-2-725 (2020).

Jones's claims for common law fraudulent concealment and violation of the MMWA would have begun accruing only when the defect should have been discovered through reasonable diligence.  On the face of Jones's amended complaint, there is insufficient information to determine that date.  Although Jones reports that he noticed excess oil consumption "not long after" purchasing the vehicle and he has cited online forum posts from BMW enthusiasts regarding the engine's oil consumption dating back to 2011 (Doc. 17 ¶¶ 16, 48), these facts alone are not sufficient to determine when the overall engine defect was discoverable.  As it cannot be

7

determined when the limitations period began to run in relation to these claims, BMW's motion to dismiss them on this basis will be denied.

Regarding Jones's warranty-based claims, as Jones purchased the subject vehicle in March 2012 and his warranty claims began accruing upon tender of delivery, his warranty claims would have elapsed in March 2016. (Doc. 19 at 8.) In response to this argument, Jones's amended complaint asserts five bases for tolling the applicable statute of limitations: fraudulent concealment, the discovery rule, equitable estoppel, equitable tolling,[3] and class action tolling. Because the first four tolling arguments can be satisfied by a common premise, i.e., that BMW took steps to conceal the oil consumption defect from Jones which then interfered with his ability to learn that BMW had injured him, the court addresses them together in its discussion of fraudulent concealment tolling, as do the parties themselves. (See Doc. 19 at 10-12; Doc. 20 at 7-11.) See Supermarket of Marlinton v. Meadow Gold Dairies, 71 F.3d 119, 122 (4th Cir. 1995) (fraudulent concealment); Childers Oil Co. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992) (discussing that the "discovery rule" tolls the limitations period

---

[3] Plaintiff's amended complaint and opposition both argue that the statute of limitations should be tolled based on equitable estoppel. (Doc. 17 ¶¶ 89-91; Doc. 20 at 7-11.) In his opposition, however, he cites the standards for both equitable estoppel and equitable tolling. (Doc. 20 at 8.) For the purposes of the present motion, the court will construe Jones as alleging both grounds.

for a fraud claim until a plaintiff discovers or should have discovered the falsity of defendant's statements); English v. Pabst Brewing Co., 828 F.2d 1047, 1049 (4th Cir. 1987) (explaining "equitable tolling applies where the defendant has wrongfully deceived or mislead the plaintiff" and "equitable estoppel applies where . . . the defendant engages in intentional misconduct to cause the plaintiff to miss the filing deadline").

### 1. Fraudulent concealment tolling

The parties agree that the Fourth Circuit's standard for fraudulent concealment tolling applies to the present case. (See Doc. 19 at 10, 11; Doc. 20 at 8–11; Doc. 21 at 4 n.4.) The court accepts that standard for the purposes of the present motion.[4] The fraudulent concealment doctrine provides that "when the fraud has been concealed or is of such a character as to conceal itself, and the plaintiff is not negligent or guilty of laches, the limitations period does not begin to run until the plaintiff discovers the fraud." Marlinton, 71 F.3d at 122 (internal quotation marks omitted). The doctrine applies where (1) the party pleading the

---

[4] Without deciding the issue, the court notes that as Jones's claims are subject to the North Carolina statutes of limitations, North Carolina tolling laws may be the more appropriate law for decision. See Hemenway v. Peabody Coal Co., 159 F.3d 255, 265 (7th Cir. 1998) ("When state law supplies the period of limitations, it also supplies the tolling rules.") (citing § 1983 cases, Hardin v. Straub, 490 U.S. 53 (1989), and Chardon v. Fumero Soto, 462 U.S. 650, (1983)). North Carolina courts do not typically recognize fraudulent concealment as a mechanism for tolling the statute of limitations but would consider this claim under equitable estoppel. See Friedland v. Gales, 509 S.E.2d 793, 797 (N.C. Ct. App. 1998).

9

statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, (3) despite the exercise of due diligence. Id. "Generally, whether a plaintiff exercised due diligence is a jury issue not amenable to resolution on the pleadings." Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 554 (4th Cir. 2019).

BMW argues that Jones failed to sufficiently plead fraudulent concealment on multiple grounds. First, BMW argues that Jones has not stated facts that indicate BMW engaged in any concealment such that the limitations period should be tolled. The court disagrees. In his amended complaint, Jones alleges that BMW failed to disclose the defect to him and he was precluded from knowing the severity of the defect because of BMW's misrepresentations and concealment. (Doc. 17 ¶¶ 77–84.) He alleges BMW issued TSBs outlining the defect to all BMW automotive dealers, which suggests that BMW was aware of the problem and consciously chose not to inform consumers. (Id. ¶¶ 52–57.) Further, he alleges these TSBs were put in effect to better conceal the engine's defect and related excessive oil consumption. (Id.) He also alleges that BMW launched an N63 Customer Care Package and reduced the recommended oil change intervals in 2014 to further conceal the ongoing effects of the manufacturing defect. (Id. ¶¶ 61–63.) Finally, Jones asserts that BMW continued to represent to consumers that the oil

10

consumption was normal and not a defect, despite BMW's knowledge to the contrary. (Id. ¶¶ 57, 58.) When taken as true for purposes of a motion to dismiss — as the court must — Jones's allegations state a plausible set of facts that would entitle him to tolling of the statute of limitations. See also Nyarko v. BMW of N. Am., LLC, No. CV RDB-18-3618, 2020 WL 1491361, at *7-8 (D. Md. Mar. 27, 2020) (analyzing the same factual allegations and finding plaintiffs sufficiently pleaded fraudulent concealment to survive motion to dismiss); Loy v. BMW of N. Am., LLC, No. 4:19-CV-00184 JAR, 2020 WL 5095372, at *3 (E.D. Mo. Aug. 28, 2020) (same); O'Connor v. BMW of N. Am., LLC, No. 18-CV-03190-CMA-STV, 2020 WL 1303285, at *4 (D. Colo. Mar. 19, 2020) (same); Harris v. BMW of N. Am., LLC, No. 4:19-CV-00016, 2019 WL 4861379, at *5 (E.D. Tex. Oct. 2, 2019) (same); Schneider v. BMW of N. Am., LLC, No. 18-CV-12239-IT, 2019 WL 4771567, at *7 (D. Mass. Sept. 27, 2019) (same); Carroll v. BMW of N. Am., LLC, No. 119CV000224JMSTAB, 2019 WL 4243153, at *8 (S.D. Ind. Sept. 6, 2019) (same).

Second, BMW argues that Jones did not exercise due diligence as a matter of law because "it is clear there was both capacity and opportunity to discover the mistake" within the statutory period. (See Doc. 19 at 9; Doc. 21 at 2 n.2.) This argument is unpersuasive. The precise time period during which Jones learned of the N63 engine defect and the degree to which he exercised due diligence involves issues of fact not suited for resolution at

this stage.  At the very least, Jones's amended complaint indicates that he attempted to exercise due diligence by visiting two separate BMW dealers in 2013 to identify the root of his vehicle's excessive oil consumption and both times he was informed that his vehicle was operating normally.  (See Doc. 17 ¶¶ 17, 18.)  Although Jones alleges that discussion of the N63 engine was a "hot topic" in certain sectors of the internet as early as 2011 (id. ¶ 49), the court cannot conclude at this early stage that Jones was knowledgeable of, or even had access to, such discussions or other information which would lead him to believe that his engine had a defect.  Accordingly, Jones has sufficiently alleged facts supporting fraudulent concealment tolling at this stage.

### 2. Class action tolling

Under American Pipe & Construction Co. v. Utah, 414 U.S. 538, 554 (1974), "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."[5]  Class action suits trigger the

---

[5] Although North Carolina has adopted class action tolling under American Pipe, see Scarvey v. First Fed. Sav. & Loan Ass'n of Charlotte, 552 S.E.2d 655, 661 (N.C. 2001), this case involves cross-jurisdictional tolling, see Wade v. Danek Med., Inc., 182 F.3d 281, 287 (4th Cir. 1999) (defining cross-jurisdictional tolling to be where courts toll the limitations period of related state law claims during the pendency of a class action in another court); Nyarko, 2020 WL 1491361, at *9 n.8 (arising from the Bang class action).  North Carolina courts have not decided whether to accept cross-jurisdictional tolling.  In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig., No. 9 CV 3690, 2015 WL 3988488, at *31 (N.D. Ill. June 29, 2015).  However, the court notes that

tolling of the limitations period because such suits properly give defendants notice of the "essential information necessary to determine both the subject matter and size of prospective litigation" within the statutory limitations period. Id. at 554–55. Such tolling ceases for an individual's claims when the individual putative class member opts out of the class. Womack v. United Parcel Serv., Inc., 311 F. Supp. 2d 492, 497 (E.D.N.C. 2004).

Here, Jones relies on the Bang class action lawsuit to support the tolling of the limitations period. However, BMW argues that Jones's claims should not be tolled based on that class action because Jones's claims are not "the same" as those raised in it. (Doc. 19 at 13–14.) Specifically, BMW argues that Jones's claims are based on North Carolina law, which was not implicated in the prior class action suit. (Id.) BMW cites Crown, Cork & Seal Co. v. Parker in support of its contention, but this case does not suggest that subsequent individual claims must be exactly the same or that both cases must cite the exact same statutory provisions

---

few states have adopted cross-jurisdictional tolling and federal courts have been wary to extend cross-jurisdictional tolling where states have not decided the issue. See, e.g., Wade, 182 F.3d at 287–88 (Virginia); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025 (9th Cir. 2008) (California); Chavez v. Occidental Chemical Corp., 933 F.3d 186 (2d Cir. 2019) (refusing to determine whether New York permits cross-jurisdictional tolling and certifying the question to the New York State Court of Appeals). For the purposes of the present motion, as neither party has argued this issue, the court accepts the application of cross-jurisdictional tolling.

13

for class action tolling to apply. See 462 U.S. 345 (1983). Rather, courts look to whether the claims asserted in a prior class action suit provide defendants with sufficient notice of the substantive claims against them. See, e.g., Davis v. Bethlehem Steel Corp., 769 F.2d 210, 212 (4th Cir. 1985) (finding that tolling did not apply because the class suit "does not adequately notify the defendants of the substantive claims against them, nor of the generic identities of the potential plaintiffs"); Tosti v. City of Los Angeles, 754 F.2d 1485, 1489 (9th Cir. 1985) (finding that tolling applied to a different claim because the class suit involved the same allegations and "[t]he City had ample notice of the nature of Tosti's discrimination claims"); Lindner Dividend Fund, Inc. v. Ernst & Young, 880 F. Supp. 49, 54 (D. Mass. 1995) ("While a subsequent individual suit need not necessarily be identical in every respect to an earlier class action for the limitations period to be tolled, . . . the class action suit must give defendant ample notice of plaintiff's individual claim."); Child.'s Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp., No. CV-11-02056-MRP-MAN, 2011 WL 13220509, at *3 (C.D. Cal. Aug. 22, 2011) ("Most courts to consider the issue have held that claims need not be identical in order for American Pipe to apply. The inquiry is whether the claims concern the same evidence, memories, and witnesses as the subject matter of the original class suit.") (internal quotations marks and citations omitted). Other

14

courts have applied this standard to the multiple cases arising out of the Bang class action and have allowed claims to go forward despite not being brought under the same statutory provisions as those in the prior class action suit. See Nyarko, 2020 WL 1491361, at *9 n.8; Loy, 2020 WL 5095372, at *3; Schneider, 2019 WL 4771567, at *7; Carroll, 2019 WL 4243153, at *8.

Jones opted out of the Bang class action settlement in August 2018. (Doc. 17 ¶ 92.) The claims he brings in the present action arise from the same set of facts that underpinned the Bang class action. Compare Bang, 2016 WL 7042071 at *1–3 with (Doc. 17 ¶¶ 14–76). Further, all of the claims Jones brings under North Carolina law mirror those brought in Bang under other states' laws. Compare Bang, 2016 WL 7042071 at *5–8 with (Doc. 17 ¶¶ 104–51). Given the near-identical similarity between the facts and claims at issue in the two cases, the court concludes that Jones has plausibly claimed that his individual action qualifies for tolling under American Pipe.

Because BMW has failed to carry its burden of demonstrating on the face of the complaint that the limitations periods for Jones's warranty-based claims have expired, its motion to dismiss the claims on these grounds will be denied.

## B. Breach of Express Warranty Claim

Under North Carolina law, to state a claim for breach of an express warranty, a plaintiff must show (1) there was an express

15

warranty of fact or a promise as to the product, (2) the plaintiff relied on the warranty in deciding to purchase the product, and (3) the defendant breached that warranty. Maxwell v. Remington Arms Co., No 1:10CV918, 2014 WL 5808795, at *3 (M.D.N.C. Nov. 7, 2014) (citing Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF Enters., 697 S.E.2d 439, 447 (N.C. Ct. App. 2010)).

BMW argues that Jones has failed to sufficiently allege the second required element, his reliance on the express warranty, and that he instead alleges only "legal trigger words," such that the claim should be dismissed. (Doc. 19 at 15.) The court disagrees. The allegations underpinning Jones's claim of reliance are sufficiently specific to survive a motion to dismiss. Compare Remington, 2014 WL 5808795, at *4 (finding the plaintiff failed to plead reliance where he alluded to the written limited warranty but did not allege "the terms of that warranty, that he received the warranty prior to purchase, or that he otherwise relied on the warranty"), with Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d. 614, 621 (M.D.N.C. 2006) (finding reliance sufficiently pleaded where plaintiff alleged that he "reasonably relied on Defendants' representations and warranties" and those representations "became a basis of the bargain" between the parties, specifying that "[a] higher level of specificity is not required . . . at the pleadings stage"). Here, Jones has alleged that he received both of the subject warranties prior to purchase;

16

that, among other things, the warranties represented that BMW would repair the vehicle's engine in the event of a defect; that he relied on that representation; and that the representation was material to his decision to purchase the vehicle. (Doc. 17 ¶¶ 28-30.) These allegations are specific enough to demonstrate reliance at the pleading stage. As such, BMW's motion to dismiss Jones's breach of express warranty claim for failure to state a claim will be denied.

## C. Pleading with Requisite Particularity

BMW argues that Jones's claims for fraudulent concealment and violation of the UDTPA should be dismissed because he has not pleaded the causes of action with the required particularity.

Fed. R. Civ. P. 9(b) creates a heightened pleading standard for claims brought in federal court based on fraud or mistake, including state law claims. Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 725-26 (M.D.N.C. 2015). Under this rule, parties alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Parties must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir.

2008) (citing <u>Harrison v. Westinghouse Savannah River Co.</u>, 176
F.3d 776, 784 (4th Cir. 1999)). These requirements extend to
claims under the UDTPA when such claims are predicated on an
underlying fraud.[6] <u>Topshelf</u> at 729.

The purposes of this heightened pleading standard are to give
a defendant sufficient notice of the claim to permit them to
formulate a defense; to protect against frivolous suits; to
eliminate suits where all the fraud facts are learned after
discovery; and to protect defendants from harm to their goodwill
and reputation. <u>Humana, Inc. v. Ameritox, LLC</u>, 267 F. Supp. 3d
669, 677 (M.D.N.C. 2017) (citing <u>Harrison</u>, 176 F.3d at 784).
Consequently, "[a] court should hesitate to dismiss a complaint
under Rule 9(b) if the court is satisfied (1) that the defendant
has been made aware of the particular circumstances for which [it]
will have to prepare a defense at trial, and (2) that plaintiff
has substantial prediscovery evidence of those facts." <u>Harrison</u>,
176 F.3d at 784.

To state an actionable claim of fraud under North Carolina
law, the following essential elements must be shown: (1) a false
representation or concealment of a material fact, (2) that was

---

[6] Jones's claim under the UDTPA is based in the same nondisclosure upon
which he bases his fraudulent concealment claim. Thus, to the extent
Jones satisfies the pleading requirements for his fraudulent concealment
claim, the court will consider his claim under the UDTPA similarly
satisfied. (<u>See</u> Doc. 19 at 15-19 (making no arguments regarding
Plaintiff's UDTPA claim separate from his fraudulent concealment
claim).)

reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. Liner v. DiCresce, 905 F. Supp. 280, 288 (M.D.N.C. 1994) (citing Myers & Chapman, Inc. v. Thomas G. Evans, Inc., 374 S.E.2d 385 (N.C. 1988)). Further, when alleging fraudulent concealment, plaintiffs must also allege that the defendant had a duty to speak such that their silence was fraudulent. Griffin v. Wheeler-Leonard & Co., 225 S.E.2d 557, 565 (N.C. 1976). For parties negotiating at arm's length, a duty to speak arises where either (1) one party has taken affirmative steps to conceal material facts from the other or (2) one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence. Breeden v. Richmond Cmty. Coll., 171 F.R.D. 189, 196 (M.D.N.C. 1997).

Here, BMW argues that Jones has failed to state a claim for fraudulent concealment, first because Jones has not sufficiently alleged that BMW had a duty to speak. (Doc. 19 at 17-18.) Jones, however, has alleged facts that plausibly indicate BMW had a duty to speak because BMW took affirmative steps to conceal material facts regarding the defect in the N63 engine. Specifically, Jones's amended complaint indicates that, despite his vehicle's increased oil usage and BMW's awareness of the defect, Jones was told by multiple BMW dealerships that his engine was operating

19

normally. (Doc. 17 ¶¶ 17, 18, 52-58.) He alleges that BMW's June 2013 TSB and the "N63 Customer Care Package" were both attempts to conceal the severity of the defect from consumers and reduce complaints. (Id. ¶¶ 54-55, 61-63.) If true, these actions constitute affirmative acts taken to conceal a material fact — the N63's excessive oil consumption, indicative of an engine defect — which would have imposed upon BMW a duty to speak.

Jones has also plausibly alleged BMW had a duty to speak because it had knowledge of the N63 engine defect, about which Jones was ignorant.[7] (See id. ¶ 70.) He claims that BMW had knowledge of the defect as early as 2008 based on sources not publicly available, including pre-release testing data, durability testing, early consumer complaints, testing conducted in response to those complaints, aggregate data from BMW dealers, dealer repair orders, and other internal sources. (Id. ¶ 69.) He also claims he was ignorant of the engine defect, as demonstrated by his decision to purchase the vehicle, the price paid for the vehicle, and his repeated attempts to have the car repaired. (Id. at ¶¶ 17-18, 76.) Although factual development through discovery may show that Jones should have known about the alleged defect when he purchased the subject vehicle based on, e.g., information that was

---

[7] As discussed in Section A.1., supra, questions regarding the discoverability of the defect and Jones's due diligence are not appropriate for resolution at the current stage.

publicly available at the time, that is not conclusively established by the allegations in the amended complaint. The allegations taken together plausibly suggest that BMW had a duty to speak, such that its silence was fraudulent.

BMW further argues that Jones has failed to meet the pleading requirements of Rule 9(b) because, relying on the standard articulated in Harrison, 176 F.3d at 784, Jones has failed to specifically allege the contents of the misrepresentations, the time and place of the misrepresentations, the persons who made the misrepresentations, and the fruit obtained thereby. (Doc. 19 at 18.) However, where a plaintiff alleges fraud by concealment — as Jones does here — the level of particularity required is adjusted. See Breeden, 171 F.R.D. at 196 (acknowledging that fraud by concealment "is by its very nature, difficult to plead with particularity") (quoting Daher v. G.D. Searle & Co., 695 F. Supp. 436, 440 (D. Minn. 1988)). To comply with the enhanced pleading requirements of Rule 9(b) for a claim of fraudulent concealment, a plaintiff will usually be required to allege with reasonable particularity: (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to

make such disclosures, (5) what the defendant gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.  Id. at 195.

As the court has already addressed, Jones sufficiently pleaded the situation and events giving rise to the duty to speak. He has also specifically alleged the content of the information withheld and its materiality.  Although Jones has not identified a specific natural person who failed to make the required disclosures, this is not strictly necessary when alleging fraud against a corporate defendant.  See Smith v. Clark/Smoot/Russell, 796 F.3d 424, 432-33 (4th Cir. 2015) (rejecting Rule 9(b) challenge to allegations involving false certification of pay records where the plaintiff identified the perpetrators as the corporate defendants and provided evidence of the fraud); United States ex rel. Bledsoe v. Community Health Sys., Inc., 501 F.3d 493, 506 (6th Cir. 2007) (rejecting contention that, "in addition to alleging specific false claims, the [plaintiff] must plead the identity of the specific individual employees within the defendant corporation who submitted false claims to the government," and "hold[ing] that while such information is relevant to the inquiry of whether a relator has pled the circumstances constituting fraud with particularity, it is not mandatory").  Here, Jones has made sufficient allegations regarding BMW's actions, and the actions of

its agents, such that the "who" requirement of Rule 9(b) is satisfied. Further, Jones has sufficiently alleged reasonable reliance (see Doc. 17 ¶ 143) and damages stemming from the misrepresentation (id. ¶ 72 (explaining he incurred more frequent maintenance visits, increased out-of-pocket spending on replacement oil, and decreased resale value on his vehicle)). Lastly, the amended complaint demonstrates that had Jones known of the engine defect, he would not have purchased the subject vehicle, illustrating the fruits obtained from the misrepresentation. (Id. ¶¶ 7, 76, 130, 148.) Taken together, and mindful of the Fourth Circuit's instruction in Harrison, 176 F.3d at 784 ("A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."), the court is satisfied that Jones has pleaded fraudulent concealment and the fraud underlying his UDTPA claim with sufficient particularity.

### D. Economic Loss Rule

In North Carolina, the economic loss rule "generally bars recovery in tort for damages arising out of a breach of contract." Rountree v. Chowan Cty., 796 S.E.2d 827, 830 (N.C. Ct. App. 2017). "The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include,

23

or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective." Moore v. Coachmen Indus., 499 S.E.2d 772, 780 (N.C. Ct. App. 1998). Thus, a "tort action must be grounded on a violation of a duty imposed by operation of law," not a violation of a duty arising purely from "the contractual relationship of the parties." Rountree, 796 S.E.2d at 831 (internal quotation marks and citation omitted). "Accordingly, North Carolina law requires courts to limit plaintiffs' tort claims to only those claims which are 'identifiable' and distinct from the primary breach of contract claim." Legacy Data Access, Inc. v. Cadrillion, LLC, 889 F.3d 158, 164 (4th Cir. 2018) (quoting Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998)).

BMW argues that Jones's claims for fraudulent concealment and violations of the UDTPA are barred by the economic loss rule because Jones has not alleged that BMW breached a duty separate from those required of it under the relevant warranties.[8] (Doc. 19 at 19–21.) The court disagrees.

---

[8] BMW relies on Bussian v. DaimlerChrysler Corp. in support of this argument. 411 F. Supp. 2d 614 (M.D.N.C. 2006). However, Bussian "limit[ed] its decision to cases . . . involving allegations of a defective product where . . . the allegations of unfair trade practices are intertwined with the breach of contract or warranty claims." Id. at 627. Here, Jones alleges unfair and deceptive trade practices at least partially in relation to the inducement of the contract, separate from his claims under the warranty. To that extent, Bussian is inapplicable. This is consistent with the decisions of multiple courts that have declined to extend the holding of Bussian in similar cases. See, e.g., In re Caterpillar, Inc., C13 & C15 Engine Prod. Liab. Litig.,

24

"Under North Carolina law, a party to a contract owes the other contracting party a separate and distinct duty not to provide false information to induce the execution of the contract."[9] Schumacher Immobilien Und Beteiligungs AG v. Prova, Inc., No. 1:09cv00018, 2010 WL 3943754, at *2 (M.D.N.C. Oct. 7, 2010); see also Ada Liss Grp. v. Sara Lee Corp., No. 06CV610, 2010 WL 3910433, at *11 (M.D.N.C. Apr. 27, 2010) (finding that the defendant owed the plaintiff "a duty not to provide deceptive or misleading information" in connection with their distributorship agreement); but see Wireless Commc'ns, Inc. v. Epicor Software Corp., Civil No. 3:10CV556-DSC, 2011 WL 90238, at *5 (W.D.N.C. Jan. 11, 2011) (distinguishing Ada Liss and Schumacher on the basis that the

---

No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at *36 (D.N.J. July 29, 2015); In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 966-67 (N.D. Cal. 2014); see also Ellis v. Louisiana-Pac. Corp., 699 F.3d 778, 787 (4th Cir. 2012) ("North Carolina courts have never addressed whether UDTPA claims are subject to the [economic loss rule]."); Coker v. DaimlerChrysler Corp., 617 S.E.2d 306, 319 (N.C. Ct. App. 2005) (Hudson, J., dissenting) ("[B]y enacting a remedy for economic losses suffered by reason of an act deemed wrongful by the statute, the legislature has effectively preempted the economic loss rule for those cases covered by the act.").

[9] North Carolina law also imposes a duty not to defraud others. Definitive Staffing Sols., Inc. v. Staffing Advantage, L.L.C., No. 7:18-CV-187-FL, 2019 WL 3660878, at *6 (E.D.N.C. Aug. 6, 2019) (citing Forbis v. Neal, 649 S.E.2d 382, 387 (N.C. 2007), and Ragsdale v. Kennedy, 209 S.E.2d 494, 500 (N.C. 1974)). This duty may be considered separate from a breach of contract where "allegations of fraud and deceit are obvious from the manner in which the breach is alleged." See Oestreicher v. Am. Nat. Stores, Inc., 225 S.E.2d 797, 808 (N.C. 1976); see also Definitive Staffing, 2019 WL 3660878, at *6. The court does not read the pleadings as presenting such a case and, as such, does not consider this as a separate duty upon which Jones can rely to overcome the economic loss rule.

plaintiffs in those cases "specifically pled facts that the defendants never intended to perform the contracts or specifically intended to deceive the plaintiffs," whereas the plaintiff in Wireless Commc'ns never "allege[d] that Epicor entered into the Agreement with the intent not to perform"). As discussed above, North Carolina imposes a duty to disclose on parties negotiating at arm's length where (1) one party has taken affirmative steps to conceal material facts from the other or (2) one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence. Breeden, 171 F.R.D. at 196.

The extent to which Jones's fraudulent concealment and UDTPA claims are barred by the economic loss rule thus depends on whether Jones has sufficiently alleged that BMW had a duty to disclose the N63 engine defects prior to the sale of the vehicle and the execution of the warranties. See also Definitive Staffing Sols., Inc. v. Staffing Advantage, L.L.C., No. 7:18-CV-187-FL, 2019 WL 3660878, at *6 (E.D.N.C. Aug. 6, 2019) ("While plaintiff's breach of contract claim looks to whether defendant performed under the Agreement, plaintiff's fraud and UDTPA claims focus on whether defendants procured the Agreement under false pretenses or deceptively performed under the Agreement to increase their income without plaintiff's knowledge or consent.").

As discussed in Section A.1., supra, Jones alleges BMW had a duty to disclose, such that its silence would constitute false inducement of a contract, because (1) BMW took affirmative acts to conceal the severity of the engine defect from him and (2) BMW had knowledge of the engine defect, about which Jones was ignorant and could not discover through reasonable diligence. In support of the first rationale, Jones reports that BMW took affirmative acts to conceal the defect by having service technicians report the engine functioning as normal in 2012, instructing service technicians to put double the recommended amount of oil in affected vehicles starting in June 2013, and launching the Customer Care Package and altering the recommended oil change intervals in December 2014. However, each of these acts occurred after Jones purchased the vehicle in March 2012. As these acts of concealment occurred after Jones entered the warranty contract, they do not support a claim that BMW was under a duty to disclose at the time of contracting such that its silence constituted the false inducement of the contract.

Alternatively, Jones argues that BMW was under a duty to disclose because it knew about the engine defect while Jones was ignorant and unable to discover it through reasonable diligence. This rationale is plausible. As discussed in Section A.1., supra, Jones has alleged that BMW had knowledge of the defect at the time of contracting based on sources of information unavailable to

Case 1:20-cv-00057-TDS-JEP   Document 24   Filed 09/25/20   Page 27 of 28

consumers.  Jones has plausibly claimed his ignorance of the defect based on his purchase of the vehicle, the price he paid for the vehicle, and his repeated attempts to have the car repaired. Although Jones must also ultimately show that he was unable to discover the defect through his own reasonable diligence, this issue is not well-suited for determination at the motion to dismiss stage.  Edmonson, 922 F.3d at 554 ("Generally, whether a plaintiff exercised due diligence is a jury issue not amenable to resolution on the pleadings.")  As such, the court is satisfied that Jones has plausibly claimed that BMW violated a duty separate from those owed to him by the warranties — specifically a duty not to provide false information, or fraudulently remain silent, to induce the execution of the contract — such that his fraud and UDTPA claims survive a motion to dismiss.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that BMW's motion to dismiss (Doc. 18) is DENIED.

                                    /s/   Thomas D. Schroeder
                                   United States District Judge

September 25, 2020

28